Gregorio Castillo and Martha Castillo v. Commissioner.
Castillo v. Commissioner
Docket No. 5928-70.
United States Tax Court
T.C. Memo 1971-87; 1971 Tax Ct. Memo LEXIS 250; 30 T.C.M. (CCH) 354; T.C.M. (RIA) 71087; April 26, 1971, Filed Gregorio Castillo, pro se, 738 McClay Rd., Novato, Calif. Sidney U. Hiken and Jeffrey E. Boly, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency of $240.70 in petitioners' Federal income tax for the year 1968. Petitioners have contested only one of the adjustments made in the statutory notice of deficiency. Therefore, the only issue we must decide is whether transportation expenditures incurred by petitioner Gregorio Castillo, a flight engineer, in traveling by private automobile between his residence and place of employment are deductible as ordinary and necessary business expenses under section 162(a). [1]
*251 Findings of Fact Most of the facts have been stipulated by the parties and are found accordingly. Gregorio Castillo (herein called petitioner) and Martha Castillo are husband and wife, who at the time of filing their petition in this proceeding resided in Novato, California. They timely filed their 1968 joint Federal income tax return with the Internal Revenue Service Center at Ogden, Utah. Petitioner was employed as a pilot by United Air Lines, Chicago, Illinois (herein referred to as United), during the year in question, where he was designated a flight engineer on Boeing 720 aircraft. For purposes of his United employment, petitioner was home based at San Francisco International Airport (herein referred to as "the airport"), which is located approximately ten miles south of San Francisco on the San Francisco Peninsula. Each flight 355 assignment flown by petitioner commenced and terminated at this airport. Located wtihin an eight-mile radius of the airport are the residential communities of Daly City, Pacifica, San Bruno, South San Francisco, Millbrae, Burlingame, Hillsborough and San Mateo. For personal reasons the petitioner established a family residence in Novato, *252 California. Novato is located north of San Francisco, across the Golden Gate channel, in Marin County. The distance between petitioner's residence and the airport is approximately 43 miles. During three months of the year 1968 the petitioner was on 24-hour call. During the remainder of that year he flew regularly scheduled United flight assignments. When he was not on 24-hour call, he was required by United to report at the airport at least one hour before scheduled takeoff time. When he was on 24-hour call, it was necessary for him to depart for the airport almost immediately after telephone notification of a flight assignment. On these latter occasions, if the petitioner did not arrive at the airport by the scheduled departure time, departure of the airplane would have to be delayed until he arrived at the airport. It is possible to travel between petitioner's residence and the airport by public transportation. During 1968 the Airport Bus Service operated buses between downtown San Francisco and the building at the airport where the petitioner reports for flight assignments. The fare was $1.10 each way. The departure schedule from the downtown San Francisco airlines terminal *253 for the airport in 1968 was as follows: Between 6 a.m. and 10 p.m. the buses departed every 20 minutes beginning on the hour. After 10 p.m. there were buses at 10:30 p.m., 11 p.m., 11:30 p.m., 12 midnight, 1:20 a.m., 3:45 a.m., 4:40 a.m., 5:20 a.m., and again at 6 a.m. Bus departures from the airport to San Francisco were scheduled to accommodate flight arrivals. During 1968 the Greyhound commuter buses operated between Novato and Greyhound's downtown San Francisco terminal, which is located six blocks away from the downtown San Francisco airlines terminal. The distance between petitioner's residence and the Greyhound bus stop in Novato is two miles. The automobile driving time between petitioner's residence and the airport under ideal conditions is 70 minutes. Under heaviest traffic conditions, the driving time is as much as 2 hours. Under ideal conditions, with immediate connections in San Francisco, the total bus travel time between petitioner's residence and the airport is 3 hours. Under heaviest traffic conditions, but still with immediate connections in San Francisco, the total bus travel time between these points is as much as 4 hours. A delay in connections would prolong *254 the total bus travel time accordingly. The petitioner used the bus to travel to and from work during 1968 on approximately three occasions to determine its feasibility. He decided that it was not feasible. At times the buses did not run at all and when they did run the one-way travel time could be more than 4 hours and the round trip travel time more than 8 hours. Yet when he was on 24-hour call, it was imperative that he be able to Additionally, when on call, Federal Aviation Administration rules permitted him to be recalled to the airport within as little as 9 hours and 15 minutes after completion of a previous flight assignment. This would have left petitioner almost no rest time. Finally, 50 percent of his scheduled flight assignments either departed from or arrived at the airport at a time when Greyhound buses were not running. Accordingly, for these reasons the petitioner could not have feasibly used public transportation for a total of 75 percent of the 108 occasions he traveled between his residence and the airport during 1968. Except for the three occasions mentioned above, petitioner traveled between his residence and the airport by personal automobile during the year *255 1968. He made 108 round trips at 86 miles each for a total of 9,288 miles. For this travel he has claimed a deduction of $928.80 at 10 cents a mile and tolls of $27, or a total travel deduction of $955.80. United did not charge petitioner for airport parking. On each of the 108 occasions mentioned the petitioner carried with him an 18-pound suitcase with dimensions of 24 inch X 8 inch X 18 inch which contained clothing and personal items. He also carried a 24-pound flight bag with dimensions of 22 inch X 10 inch X 13 inch which contained the following flight equipment: An airplane flight manual, two folders of airline maps, one logbook, a fueling handbook, a flight operations manual, approach plates, two flashlights, an earset and a tool kit containing 1 crescent wrench, 2 screwdrivers, 2 pairs of pliers and 1 roll of electrical tape. When he traveled by bus it was necessary for the petitioner to keep 356 the flight bag in his personal possession since it was essential to his work and he could not risk having it misplaced. United does not provide storage facilities at the airport for either the suitcase or the flight bag. There are public lockers at the airport at a cost of *256 25 cents per instance of storage which would accommodate the suitcase and flight bag but they were not used by the petitioner. The petitioner takes the flight bag to his residence for home study of manuals, handbooks and maps. United does not provide personal desk space at the airport for such study. Petitioner's flight manuals and handbooks are supplemented with weekly addendums from United which he must file in the appropriate loose leaf manual or book. Both United and the Federal Aviation Administration test the petitioner at frequent intervals regarding his ability to properly perform his duties as a flight engineer. In order to pass these tests it is necessary for the petitioner to spend an average of 5 hours a week reviewing his manuals, handbooks, and maps. Ultimate Findings of Fact Petitioner would have used his personal automobile to travel to and from work during 1968, whether or not he had to carry his flight bag and personal suitcase, and therefore has incurred nothing more than nondeductible commuting expenses. Opinion Petitioner contends that he is entitled to deduct the expenses he incurred in driving his personal automobile to and from his place of employment *257 during 1968 for the following reasons: 1. The use of public transportation was not feasible due to the length of time required to complete the trip between his residence and the airport. 2. The flight bag and suitcase carried by petitioner were bulky and caused inconvenience to the other bus passengers. 3. During the period petitioner was on 24-hour call, use of his personal automobile was required so that he could arrive at his place of duty within the prescribed time. 4. The employment in question is composed of temporary jobs beyond the general area of petitioner's tax home. For the claimed travel expenses at issue in this case to be deductible, they must fit within section 162 which provides: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * We are convinced from our review of the stipulated facts in this case that petitioner used his private automobile to travel between his home in Novato and San Francisco International Airport because it was the only satisfactory mode of transportation available *258 to him for traveling between these two points. Whether petitioner had to carry a flight bag and personal suitcase with him on such trips or not, he would have driven his private automobile between his home and the airport in order to report for his assignments. Hence, we think the expenses incurred in traveling between petitioner's residence and place of employment were simply commuting costs which are nondeductible personal expenses. ; (C.A. 9, 1971), affirming ; . In the recent case of , involving a United Air Lines flight officer, we were called upon to determine whether travel expenses identical to those incurred by petitioner herein were properly deductible under section 162(a). We stated in that case: [If] a taxpayer would have used his personal automobile in any event to commute to and from work, as in the instant case, no deduction should be allowed for transporting tools; the need to transport equipment would not have burdened *259 the taxpayer with any additional expense and the entire cost of going to and returning from work is a personal commutation expense. A deduction for transporting heavy, bulky, unwieldly and cumbersome tools and equipment should be allowed only to the extent that the transporting of such items causes a taxpayer to incur expenses above and beyond those he would otherwise incur in commuting. In an attempt to fit his case within another category under which travel expenses would be deductible, petitioner claims that his expenses were incurred in connection with travel to temporary jobs beyond the area of his tax home. This is not supported by the stipulated facts and is in fact 357 contradicted by the statement that he was home based at San Francisco International Airport, the very point at which all of the travel in question commenced or terminated. Petitioner also points out in his memorandum brief that in the case of , under circumstances identical to those in the instant case, this Court found that a part of Fausner's commuting expenses were deductible because he was required to carry his flight bag and suitcase with him on *260 each trip. As pointed out by Chief Judge Drennen in his concurring opinion in the Hitt case: This was only because the Court of Appeals for the Second Circuit, to which appeal in the Fausner case would lie, adopted a different rule in , it being that a taxpayer is entitled to deduct that portion of his reasonable driving expenses which is allocable to the transportation of tools or equipment even though the taxpayer would have used his car in any event to go to work had it not been necessary for him to transport his tools. Pursuant to the policy decision of the Tax Court in , we must apply the rule approved by the controlling Second Circuit, where it is squarely in point, in deciding the Fausner case, even though it is contrary to the rule adopted by this Court. Applying the rule of the Second Circuit to the facts in the Fausner case we concluded that Fausner was entitled to deduct a portion of his commuting expenses. In the instant case we are not bound to follow the decision of (C.A. 2, 1966), certiorari denied , *261 because the Court of Appeals for the Ninth Circuit, wherein venue for appeal from the decision in this case would lie, has not yet expressed its views on this issue. Accordingly, we decide this case in conformity with the "commuter rule" which we enunciated in the cases of , and . That rule, as quoted earlier in this opinion, is to the effect that normal expenses incurred in traveling between one's home and place of business are nondeductible personal expenses. Thus, to be entitled to deduct any portion of his commuting expenses, a taxpayer must show that "but for" the business necessity of carrying his tools, equipment or other paraphernalia required in his trade or business, he would not have otherwise driven his private automobile to and from his place of employment. If he would have driven his automobile to and from work in any event, whether because of the distances involved, the lack of other adequate means of transportation, or because of his own personal preference, no deduction for any such travel expenses is permitted, even though he carries with him tools, equipment, or other paraphernalia *262 used in his trade or business. For the reasons stated herein, Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩